**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, a minor, JOHN DOE and ) | |
| JANET DOE, individually as parents and ) | |
| next friends of JANE DOE ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 17-CV-3774 |
| v. ) | |
| ) | Hon. Amy J. St. Eve |
| EVERGREEN PARK ELEMENTARY ) | |
| SCHOOL DISTRICT 124; CENTRAL ) | |
| MIDDLE SCHOOL; ROBERT MACHAK; ) | |
| RITA SPARKS; TRAYON SALLIS; and ) | |
| PAOLA POLASEK ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 13, 2017, Plaintiff Jane Doe ("Doe") brought the present Amended Complaint against Defendants, Evergreen Park Elementary School District 124 (the "District"), Central Middle School ("Central"), Robert Machak, Rita Sparks, Trayon Sallis, and Paola Polasek (collectively, "Defendants") alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), 42 U.S.C. § 1981 ("§ 1983"), and various state law claims.[1] Before the Court is Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants' motion.

---

[1] In its Response, Plaintiff withdraws her claims for negligent hiring and training, her claims under the Illinois School Code, and all her claims against Central Middle School. (Pl.'s Resp. 18.) These claims are no longer in this case, the Court thus does not address them in this Opinion.

# BACKGROUND

Plaintiff, Jane Doe, and her parents, John and Janet Doe, are residents of Evergreen Park, Illinois. (R. 25, Am. Compl. ¶ 1.) Plaintiff, a thirteen-year-old girl, attended Central, which is the only public middle school in Evergreen Park and in the District. (*Id.* ¶¶ 2-5.) Defendant Robert Machak is the Superintendent of the District, Defendant Rita Sparks is the principal of Central, Defendant Trayon Sallis is the assistant principal, and Defendant Paola Polasek is a teacher at Central. (*Id.* ¶¶ 6, 8, 10, 12.) Plaintiff alleges that Defendants acted with deliberate indifference to physical, verbal, and sexual harassment she suffered at Central, forcing her to transfer to a private school in September 2017. (*Id.* ¶¶ 17, 49.)

Plaintiff was enrolled at Central from 2015 until 2017, and she alleges that during that time, a minor male student, James Roe ("Roe"), bullied, physically and verbally assaulted, and sexually harassed her because she is a female. (*Id.* ¶ 20.) Plaintiff alleges that Roe had a "documented history" of harassing, intimidating, and inappropriately touching female students, including Plaintiff's friends and that he bullied her and at least one of her friends during the 2015-16 school year. (*Id.* ¶¶ 21-22.) Plaintiff alleges that Roe called Fridays "ass grab Fridays" and would grope at least one female student during school on those days. (*Id.* ¶ 23.) She alleges that at least one female student moved out of the District prior to the 2016-17 school year because Roe had bullied her, verbally assaulted her, and touched her inappropriately. (*Id.*) Plaintiff claims that other parents have stated that they also plan to move their children to other schools because of Roe. (*Id.* ¶ 24.) Plaintiff alleges that, on one occasion, Roe threatened to have his parents kill another student and her parents if the student reported his behavior. (*Id.* ¶ 26.) Plaintiff alleges that Defendants were aware of Roe's bullying conduct in the 2015-16 school year and were aware that Roe bullied, intimidated, sexually harassed, and inappropriately

touched female students and had received multiple bullying complaints relating to Roe. (*Id.* ¶ 27.) Despite this knowledge, Plaintiff alleges Defendants failed to take any action to discipline Roe. (*Id.* ¶¶ 28, 32.)

On August 23, 2016, Roe pushed Plaintiff down a set of stairs at Central, injuring her and making her worry for her safety. (*Id.* ¶ 29.) Plaintiff reported the incident to Defendant Polasek, who was at the scene of the incident, but Polasek did not discipline Roe and told Plaintiff to go to class. (*Id.*) On August 24, 2016, Plaintiff was retrieving an item from her locker, and Roe intimidated her by blocking her path repeatedly, before pushing her backwards. (*Id.* ¶ 30.) Plaintiff reported this incident to Polasek. (*Id.*) After the second incident, Plaintiff's father called the school and spoke to Polasek and Defendant Sallis, both of whom assured him that his daughter was safe at Central. (*Id.* ¶ 31.) On the same day that Plaintiff's father spoke with Sallis and Polasek, he and his wife emailed the school administration and superintendent and raised concerns about the lack of consequences for Roe and the lack of an investigation he believed the District's bullying and harassment policy mandated. (*Id.* ¶ 33.) The Does, who are both teachers in the District and who were aware of the District's policies, also proposed talking points for the next faculty meeting regarding proper documentation of bullying incidents. (*Id.* ¶¶ 34-35.)

On August 25, Defendant Sparks responded to Plaintiff's parents and promised a meeting with Roe's parents. (*Id.* ¶ 37.) She also assured them that the staff monitors the hallway during passing period. (*Id.*) The same day, Polasek called Plaintiff's parents to apologize for inadvertently broadcasting her report regarding Roe's bullying of Plaintiff to the class on a computer projector and allowing the class to see the details of the incident and students involved. (*Id.* ¶ 38.) Plaintiff alleges that as a result of Polasek's mistake, during lunch that day, other

students taunted and harassed her for getting Roe in trouble.  (*Id.* ¶ 39.)  Plaintiff ate lunch with a teacher and called her father crying.  (*Id.*)

After an email exchange with Sparks, Plaintiff's father called Mr. Machak, the superintendent, and they discussed Plaintiff's father's concerns about timely reporting and lack of disciplinary action.  (*Id.* ¶ 41.)  Machak told Plaintiff's father that Roe had previously been "on his radar."  (*Id.*)  Plaintiff's father picked her up early from school that day because she was emotionally distressed and did not feel safe in school.  (*Id.*)  Plaintiff's father also met in person with school administrators and expressed his frustration about the lack of discipline for Roe.  (*Id.* ¶ 43.)  That night the District sent an automatic call to parents about a Central student who had threatened to bring a gun to Central and "shoot up the school."  (*Id.* ¶ 44.)  Plaintiff feared that the threat was related to her.  (*Id.*)  The next day, on August 26, Plaintiff alleges that Roe came into Plaintiff's classroom, sat immediately behind her, and glared at her.  (*Id.* ¶ 45.)  The teacher did not notice Roe until another student notified her, at which point the teacher yelled at Roe and called a resource officer who admonished Roe in the hall.  (*Id.*)  A teacher followed Roe around for the rest of the day for her safety, but Plaintiff alleges that her emotional state became worse. (*Id.*)  On August 29, 2016, Plaintiff was again bullied and mocked by other students at Central, and on August 30, she refused to go to school and her parents decided to transfer Plaintiff to a private school.  (*Id.* ¶¶ 46-47.)

Plaintiff alleges that Roe bullied her and other female students because of their gender, and that Defendants were aware of Roe's bullying and harassing behavior but failed to properly discipline Roe or remedy the situation.  (*Id*. ¶¶ 49-58.)

## LEGAL STANDARD

**I.**     **12(b)(6)**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## ANALYSIS

### I. Count I—Title IX Claim

In Count I, Plaintiff alleges a Title IX discrimination claim. Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has found an implied private right of action in Title IX, with private parties authorized to seek monetary damages for intentional violations. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (*citing Cannon v. Univ. of Chi.*, 441 U.S. 677, 690–93 (1979)). "The Supreme Court has set a

high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014).  School officials are given broad latitude to resolve peer harassment and are liable only in "certain limited circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).  A plaintiff complaining of peer harassment must demonstrate that (1) the harassment was discriminatory, (2) the school officials had "actual knowledge" of the harassment, (3) the harassment was "so severe, pervasive, and objectively offensive that it . . . deprive[d] the victims of access to educational opportunities," and (4) officials were "deliberately indifferent" to the harassment. *Id.* at 650.  The Court made clear that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at 648.

Defendants argue that the Court should dismiss Count I because (1) Plaintiff has failed to allege Defendants had "actual knowledge" of any bullying incidents before Plaintiff's August 2016 complaint; (2) Plaintiff has failed to allege that Roe harassed her based on sex; (3) Plaintiff has failed to allege that the conduct of which Defendants were aware was "severe and pervasive"; and (4) Defendants were not deliberately indifferent to Plaintiff's bullying reports. The Court addresses each argument in turn.

## A.  Actual Knowledge of Bullying Before August 2016

Defendants first argue that they did not have actual knowledge of Roe's bullying and harassing actions towards Plaintiff until August 2016.[2]  Plaintiff argues that she has sufficiently alleged that Defendants were aware of Roe's bullying and harassing behavior before August

---

[2] Defendants may be liable for Roe's harassment of Plaintiff in August 2016 regardless of their knowledge of previous harassment, however, Plaintiff's failure to allege that Defendants gained actual knowledge of Roe's alleged harassment prior to August 2016 would limit the scope of her claims. Accordingly, the Court addresses the scope of Defendants' actual knowledge first.

2016, and that she does not, at this stage, need to allege that this past behavior was directed specifically at Plaintiff for it to be included within the scope of Defendants' actual knowledge.

The Seventh Circuit has held that "[s]chool administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Doe v. Galster*, 768 F.3d 611, 617–18 (7th Cir. 2014) (citations omitted). "The Supreme Court has flatly rejected applying a 'knew or should have known' standard to Title IX claims." *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008) (citations omitted). The Seventh Circuit has held that a "school district need not possess actual knowledge of [ ] acts directed at a particular plaintiff, but must still have actual knowledge of misconduct that would create risks 'so great that they are almost certain to materialize if nothing is done.'"[3] *Id.* at 605-06 (citation and internal quotation omitted). As such, if school officials are aware of a "'serial harasser,' a school district might be found to have actual knowledge of [ ] misconduct and that students might be at great risk." *Id.* at 606.

Plaintiff has alleged that Roe engaged in various types of misconduct in the 2015-16 school year, prior to August 2016 when he allegedly pushed and harassed Plaintiff. Plaintiff alleges, for example, that Roe participated in "ass grab Fridays," that one student moved out of the district due to Roe's harassment, and that Roe threatened to have his parents kill a student. (Am. Compl. ¶¶ 21-27.) Plaintiff fails to allege, however, that school officials witnessed any of these specific incidents—such as "ass grab Fridays," the death threats, or students moving—or that anyone reported the specific incidents to school officials, as required by the Seventh Circuit.

---

[3] Defendants concede in their Reply Brief that allegations of peer misconduct need not be directed at a particular plaintiff, however, they argue Plaintiff's allegations about Defendants' knowledge lack sufficient specificity to constitute actual knowledge. (R. 37, Defs.' Reply 3.)

*Galster*, 768 F.3d at 617–18 ("[s]chool administrators have actual knowledge only of the incidents that they witness or that have been reported to them.").

Instead, Plaintiff has alleged in conclusory fashion that Roe had a "documented history" of misbehavior and that Defendants "were aware of [ ] Roe's prior conduct." (*Id.* ¶¶ 21, 27.) As several courts have found, these generalized, conclusory allegations are insufficient to reasonably infer that Defendants had actual knowledge of these specific incidents of misbehavior. *See, e.g.*, *Gabrielle M. v. Park Forest–Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 823–24 (7th Cir.2003) (holding, in a "peer-harassment" claim brought under Title IX, that a school district cannot be liable for harassment occurring prior to the date the district obtains actual knowledge of the harassment); *Doe v. Bradshaw*, No. 11–cv–11593–DPW, 2013 WL 5236110, at *11 (D. Mass. Sept. 16, 2013) (dismissing the portion of a Title IX claim based on knowledge of the peer-on-peer harassment because other than offering conclusory boilerplate, the plaintiffs "fail to allege . . . that the defendants knew [the minor] was being harassed by her peers or even knew about the harassment"); *Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 231 (D. Mass. 2015) (dismissing Title IX claim because plaintiff's conclusory allegations failed to sufficiently allege defendants had actual knowledge of harassment); *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1123 (N.D. Cal. 2013) (dismissing Title IX claim on actual knowledge prong because plaintiff "plead no facts which explain the nature or scope of information" the school received).

Despite Plaintiff's failure to sufficiently allege that Defendants had actual knowledge of the specific instances of Roe's misbehavior—"ass grab Fridays" and the death threat—Plaintiff has sufficiently alleged that Defendants had actual knowledge of Roe's general bullying. Specifically, Plaintiff has alleged that when her father spoke with Robert Machak, the District

superintendent, he indicated to her father that Roe had "previously been on his radar." (Am.

Compl. ¶ 41.) While this allegation is not sufficient to infer that Defendants had actual

knowledge of ass-grab Fridays or Roe's death threats, it is sufficient, accepting all well-pleaded

facts as true and drawing all reasonable inferences in Plaintiff's favor, to allege that Defendants

had actual knowledge of Roe's general bullying behavior before August 2016.[4]

**B. Discriminatory Harassment**

Title IX protects students from discrimination "only if it is based on sex." *Galster*, 768

F.3d at 617. Defendants argue that Plaintiff has failed to allege that any of the alleged harassing

incidents of which Defendants had actual knowledge were based on Plaintiff's sex.

The Supreme Court has recognized that determining whether harassment is on the basis

of sex is more subtle in the school context because "at least early on, students are still learning

how to interact appropriately with their peers." *Davis,* 526 U.S. at 651. Essentially, to be

actionable, harassment taking place in the school environment must be "gender-oriented

conduct" and amount to more than "simple acts of teasing and name-calling among school

children." *Id.* at 651–52; *see also Wolfe v. Fayetteville, Arkansas Sch. Dist.*, 648 F.3d 860, 866

(8th Cir. 2011) (finding that under Title IX harassment must be motivated either by plaintiff's

gender or failure to conform with gender stereotypes).

Courts, including the Supreme Court, have found that peer harassment that involves

touching of a victim's private areas along with verbal statements is sex-based under Title IX. In

*Davis*, the Supreme Court found that the harassment the plaintiff suffered was sex-based where

another student attempted to touch the plaintiff's breasts and genital areas, made vulgar

---

[4] In finding that Plaintiffs sufficiently allege that Defendants had actual knowledge of Roe's pre-August 2016 bullying behavior, the Court does not address whether this general pre-August 2016 behavior was discriminatory or severe and pervasive or whether Defendants were deliberately indifferent to it. The Court addresses these issues below.

statements such as "I want to feel your boobs," made sexually suggestive thrusting motions at the plaintiff, and rubbed his body against the plaintiff in a sexual manner in the school hallway. *Id.* at 633-34, 651. The student was ultimately charged with and plead guilty to sexual battery. *Id.* at 634. *See also Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1288 (11th Cir. 2003) (finding harassment was sex-based where student made several explicitly sexual comments, touched victims' breasts, and attempted to thrust his body onto victims); *S.G. v. Rockford Bd. of Educ.*, No. 08 C 50038, 2008 WL 5070334, at *3 (N.D. Ill. Nov. 24, 2008) (finding that allegations of sexual touching combined with verbal sexual innuendoes constituted sex-based harassment).

In contrast, courts have rejected Title IX claims where the plaintiff only alleged bullying and generalized physical touching and did not allege any sexual touching or specifically gender-based harassment. In *Manfredi v. Mount Vernon Bd. of Educ.*, 94 F. Supp. 2d 447, 454 (S.D.N.Y. 2000), the court rejected a Title IX claim in part because most of the conduct the plaintiff alleged was not sex-based harassment. Specifically, the court found that five incidents of "teasing," one instance of pushing, one instance of punching, and one instance of leg-grabbing, with no allegations of sexual comments, did not constitute sex-based harassment. *Id.* The court explained that "teasing, kicking, shoving and pokes in the face are annoying and hurtful to any child who is victimized by them," but such conduct, "even if perpetrated by a child of one gender against a child of another gender—is not actionable as 'sexual' harassment." *Id.* Similarly, in *Doe ex rel. Doe 2 v. Trico Cmty. Sch. Dist. No. 176*, No. 11-CV-586-JPG-PMF, 2012 WL 686811, at *5–6 (S.D. Ill. Mar. 2, 2012), the court rejected a Title IX claim in part because it determined that the complained of harassment was not "because of sex." The court explained that the "nature of the abuse was not sexual," and instead was "the kind of run-of-the-

mill hitting and pinching that unfortunately occurs" in schools "all too often." *Id.* at \*5. The court concluded that the "mere fact that Jane is a girl [wa]s not sufficient" to lead a reasonable jury to conclude that the harassment was "because of [the victim's] sex." *Id.*

Here, Plaintiff has not sufficiently alleged that the harassment of which Defendants had actual knowledge was sex-based. Importantly, as noted above, Plaintiff has failed to sufficiently allege that Defendants had actual knowledge of Roe's inappropriate touching of female students on "ass grab Fridays." Plaintiff has only sufficiently alleged that, prior to August 2016, Defendants had Roe "on their radar" and generally were aware of his bullying behavior. Plaintiff's complaint is devoid of allegations that indicate that Defendants had actual knowledge that Roe was targeting female students because of their gender or in a sexual manner. While Plaintiff's allegations of harassment in August 2016 are more specific and describe unfortunate and hurtful actions, they do not reference sex-based misconduct. Specifically, Plaintiff alleges that on August 23, Roe pushed Plaintiff down a set of stairs, on August 24, he pushed Plaintiff near her locker, on August 25, students harassed Plaintiff for reporting Roe's conduct, and on August 26, Roe intimidated Plaintiff in class. (Am. Compl. ¶¶ 29, 30, 39, 45.) Defendants had actual knowledge of these incidents, but Plaintiff has failed to allege that any of this harassment in August 2016 was based on sex. Like in *Manfredi* and *Trico*, Plaintiff has not alleged that Roe made any sexual comments to Plaintiff or engaged in sexual touching with Plaintiff. Plaintiff has alleged that Defendants had actual knowledge only of Roe pushing and intimidating Plaintiff, and bullying other students, but this behavior, "even if perpetrated by a child of one gender against a child of another gender—is not actionable as "sexual" harassment." *Manfredi*, 94 F. Supp. 2d at 454.

Accordingly, making all reasonable inferences in Plaintiff's favor, while Roe's alleged misconduct was inappropriate and aggressive, Plaintiff has failed to sufficiently allege that the alleged harassment of which Defendants were aware was sex-based, and as such, the Court dismisses Plaintiff's Title IX claim without prejudice.[5]

## II.      Count II—Substantive Due Process Claim

Plaintiff next claims that Defendants violated 42 U.S.C. § 1983 by depriving Plaintiff of substantive due process when Roe bullied her.  "Generally, state actors do not have a due process obligation to protect citizens from private violence."  *T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010) (citation omitted).  Two exceptions to this general rule, however, exist.  The first exception arises when "a state has custody over a person," in which case "the state is obligated to offer protection because no alternative avenues of aid exist."  *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (citation omitted).  "The second exception comes into play 'when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'"  *Id.*  The second exception is known as the state-created danger doctrine, and Plaintiff brings her substantive due process claim based on this second exception.  "To establish a substantive due process claim under a state-created danger theory, [Plaintiff] must demonstrate that: (1) the [Defendants], by [their] affirmative acts, created or increased a danger that [Plaintiff] faced; (2) the [Defendants'] failure to protect her from danger was the proximate cause of her injuries; and (3) the [Defendants'] failure to protect her "shocks the conscience."  *Id.* (citing *King ex rel. King v. East St. Louis School Dist. 189,* 496 F.3d 812, 817–18 (7th Cir. 2007)).

---

[5] Because the Court has dismissed Plaintiff's Title IX claim for failing to allege that Roe's harassment was sex-based, it need not address the parties' arguments regarding whether the alleged misconduct was severe and pervasive or whether Defendants acted with deliberate indifference.

Defendants argue that Plaintiff has failed to sufficiently allege both (1) that Defendants took affirmative acts that created or increased a danger that Plaintiff faced, and (2) that Defendants' failure shocks the conscience. The Court addresses each argument in turn.

## A. Affirmative Acts Creating or Increasing a Danger

Defendants first argue that Plaintiff has failed to sufficiently allege that Defendants took affirmative acts that created or increased a danger Plaintiff faced. Plaintiff argues that although Defendants did not create the danger of bullying, their inaction increased the danger Plaintiff faced.

Contrary to Plaintiff's argument, the Seventh Circuit has explicitly held that a school's inaction or inadequate response to bullying does not "increase a danger" under a state-created danger due process theory. In *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798–99 (7th Cir. 2015), the plaintiff-student brought a due process claim and argued that the inaction and ineffective responses of school officials either created the risk that her teammates would bully her or rendered her more vulnerable to the risk of bullying. The Seventh Circuit rejected her claim and held that the plaintiff had not shown "that her teachers and coaches instigated, created, or increased the bullying that she experienced at school." *Id.* at 798. The court noted that "school officials do not have an affirmative duty to protect students," and found that while the school officials' response may have been inadequate, it did not increase the danger plaintiff faced. *Id.* (citation omitted). The plaintiff had also alleged that teachers participated in her bullying by laughing on one occassion when students moved her desk and by forcing her to participate in gym class, but the court found that these allegedly affirmative acts were insufficient to satisfy the "increase a danger" element of the state-created danger exception. *Id. See also Martin v. E. St. Louis Sch. Dist. #189*, No. 14-CV-1393-MJR-SCW, 2016 WL 1718332,

at *3 (S.D. Ill. Apr. 29, 2016) (dismissing due process claim in part because school's failure to apply certain policies did not create or increase the danger that student would be raped); *Montoya ex rel. S.M. v. Española Pub. Sch. Dist. Bd. of Educ.*, 904 F. Supp. 2d 1173, 1183 (D.N.M. 2012) (dismissing due process claim because inaction in response to bullying was not affirmative conduct that created or increased the danger to students).

Here, viewing the allegations in the Plaintiff's favor, she simply has not alleged any affirmative acts Defendants took that created or increased the danger of bullying. Plaintiff has not alleged that Defendants participated in the bullying or encouraged Roe's bullying in any way. Instead Plaintiff has merely alleged that Defendants did not take action in response to Roe's bullying and harassing behavior in 2016, and when faced with specific complaints about Roe's bullying and harassment in August 2016, their response was slow and ineffective. While Defendants' response may not have stopped Roe's bullying, Plaintiff has not alleged that Defendants "instigated, created, or increased the bullying that she experienced at school," and accordingly, she has failed to sufficiently allege that Defendants took affirmative acts to create or increase the danger she faced. *E. Porter*, 799 F.3d at 798.

Plaintiff relies heavily on *Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, 30 F. Supp. 3d 780 (C.D. Ill. 2014) in support of her argument that Defendants created or increased a danger Plaintiff faced, but key facts in that case are distinguishable from the allegations here. In *Eilenfeldt*, the plaintiff alleged not only that the school officials responded inadequately to the plaintiff's bullying, but that the "administrators and teachers facilitated ongoing bullying of [the plaintiff] by . . . actively encouraging bullying[ ] and punishing [the plaintiff] for defending himself while being bullied." *Id.* at 784. In concluding that the plaintiff's allegations were sufficient to survive a motion to dismiss, the court explained that he did base his entire

substantive due process claim on a failure to protect from third parties, but also alleged "the participation of school employees in [his] bullying." *Id.* at 790. As noted above, here, unlike in *Eilenfeldt*, Plaintiff did not allege that Defendants participated in her bullying in any way much less that they "actively encourag[ed]" the bullying or punished Plaintiff for reporting the bullying. *Id.* at 784. *Eilenfeldt* is thus unpersuasive here.

Accordingly, Plaintiff has failed to sufficiently allege that Defendants took affirmative acts to create or increase the danger she faced.

**B. Shocks the Conscience**

Defendants also argue that, even if Plaintiff had shown that Defendants took affirmative acts to create or increase a danger, Plaintiff has not sufficiently alleged that Defendants engaged in behavior that shocks the conscience. The Seventh Circuit has held that "only the most egregious official conduct" will satisfy this stringent inquiry." *Jackson*, 653 F.3d at 654 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Importantly, "[m]aking a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Id.* (citation omitted). As the Supreme Court explained, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

Applying these standards, several courts have rejected substantive due process claims against school officials where the school failed to protect a student from bullying, as long as the school did not respond in an extremely egregious or unjustifiable manner. In *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 CS, 2012 WL 4477552, at *2-3 (S.D.N.Y. Sept. 27, 2012), for example, the plaintiff brought a substantive due process claim alleging that she was

bullied and harassed on social media and at school and the school did not adequately address the bullying. The court dismissed the plaintiff's substantive due process claim finding that the school's response did not shock the conscience. *Id.* at *13. The court explained that the plaintiff's allegations indicated that the school had responded to her complaints about bullying, even though the responses were ineffective. *Id.* The court noted that even if the school had done nothing in response to her complaints of "verbal harassment and limited physical abuse," that failure would not be "conscience-shocking" because the plaintiff only experienced mild bullying. *Id.*

Similarly, in *Moore v. Chilton Cnty. Bd. of Educ.*, 936 F. Supp. 2d 1300, 1311 (M.D. Ala. 2013), the plaintiffs brought a substantive due process claim alleging that their daughter's school failed to adequately respond to aggressive peer bullying—including pulling down her pants, locking her in a closet, and constant name-calling—which ultimately led their daughter to commit suicide. The court dismissed the plaintiffs' substantive due process claim because, despite the fact that the school was aware of most of the behavior and did nothing in response, "inaction simply does not rise to the level of conscious-shocking." *Id.* The court explained that while the school may have been indifferent to the bullying, its failure to act was not "intended to injure in some way unjustifiable by any government interest," and thus did not violate substantive due process. *Id.* (citing *Davis,* 555 F.3d at 982).

Several other courts have similarly declined to find that a school's inadequate response to bullying shocks the conscience. *See e.g.*, *Smith v. Guilford Bd. of Educ.*, 226 F. App'x 58, 61, 63 (2d Cir. 2007) (no substantive due process violation even where defendants knew of some or all of the mistreatment plaintiff endured, "yet condoned, permitted and/or acquiesced in such mistreatment"); *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F. Supp. 2d 753, 771 (S.D.N.Y.

2011) (assistant principal's underestimate of severity of harassment of student and imposition of minimal punishment on harassers who later violently attacked plaintiff-student did not shock conscience); *Scruggs v. Meriden Bd. of Educ.*, No. 3:03-CV-2224(PCD), 2007 WL 2318851, at *13 (D. Conn. Aug. 10, 2007) ("In retrospect . . . the record reflects poorly on Defendants' decisions to relatively limit their response to the repeated bullying of [student] by his classmates; nevertheless, Defendants' failure to fully remedy the bullying situation does not amount to 'brutal' or 'oppressive' treatment of [student] at school."); *Yap ex rel. Yap v. Oceanside Union Free Sch. Dist.,* 303 F.Supp.2d 284, 295–96 (E.D.N.Y. 2004) ( "Plaintiffs have proffered no case law wherein the alleged failure of a school to adequately discipline its students met [the] substantive due process threshold. The Court's independent research has similarly failed to reveal any such case law."); *Castaldo v. Stone,* 192 F. Supp. 2d 1124, 1173 (D. Colo. 2001) ("[T]he School Defendants' alleged toleration of bullying, teasing, and intimidation on the part of the Columbine student body, while reprehensible if true, is not conscience shocking in a Fourteenth Amendment substantive due process sense.").

Here, viewing the allegations in Plaintiff's favor, Plaintiff has not alleged conduct that shocks the conscience. Plaintiff has alleged that Defendants had actual knowledge of Roe's general bullying prior to August 2016 and that in August 2016, Roe shoved Plaintiff twice and intimidated her in class. (Am. Compl. ¶ 29, 30, 45.) Unlike in *Moore* and *Castaldo*, where the school-defendants did not respond at all to bullying complaints and the courts still rejected substantive due process claims, here, Defendants did respond when they learned of Plaintiff's complaints. Plaintiff has alleged that in response to Roe's bullying, Defendants had a phone conference with Plaintiff's parents, promised that staff was monitoring the hallways, met in person with Plaintiff's parents, disciplined Roe for intimidating Plaintiff in class, and assigned a

teacher to monitor Roe throughout the day  (*Id.* ¶¶ 31, 37, 43, 45.)  While Plaintiff argues this response was inadequate, even if it was,[6] it still was not the type of egregious or oppressive conduct that shocks the conscience, and it certainly was not "intended to injure [Plaintiff] in some way unjustifiable by any government interest." *Davis,* 555 F.3d at 982; *Castaldo v. Stone,* 192 F. Supp. 2d at 1173 ("[T]he School Defendants' alleged toleration of bullying, teasing, and intimidation on the part of the Columbine student body, while reprehensible if true, is not conscience shocking in a Fourteenth Amendment substantive due process sense.").

Accordingly, the Court dismisses Plaintiff's substantive due process claim without prejudice because Plaintiff has failed to sufficiently allege both that Defendants created or increased a danger to Plaintiff and that Defendants' behavior shocks the conscience.

### III.     Count III—Equal Protection Claim

Plaintiff next brings a claim under the Equal Protection Clause of the Fourteenth Amendment and alleges that Defendants discriminated against her based on her sex.  The Equal Protection Clause grants to all Americans the "right to be free from invidious discrimination in statutory classifications and other governmental activity."  *Harris v. McRae,* 448 U.S. 297, 322 (1980).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law."  *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005) (citations omitted). In this case, Plaintiff invokes her equal protection rights on the basis of gender.  To sustain a claim for an equal protection violation under § 1983, Plaintiff must show that (1) Defendants "discriminated against her based on her membership in a definable class" (gender), and (2) Defendants "acted with a

---

[6] The Court takes no position on whether Defendants' response was inadequate at this time.

nefarious discriminatory purpose."[7]  *E. Porter*, 799 F.3d at 799 (citing *Nabozny v. Podlesny,* 92 F.3d 446, 453 (7th Cir. 1996)).

As the Seventh Circuit has explained, "[d]iscriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002) (internal citations omitted).  Thus, "[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against [her] because of [her] membership in a particular class, not merely that [s]he was treated unfairly." *Trautvetter v. Quick*, 916 F.2d 1140, 1150 (7th Cir. 1990).  Finally, a showing that Defendants were negligent is insufficient to sustain an equal protection claim.  *Schroeder*, 282 F.3d at 951.

Here, Plaintiff's Equal Protection Clause claim fails because, as discussed above, Plaintiff has failed to sufficiently allege that Roe harassed or bullied her because of her gender.[8] Plaintiff has failed to sufficiently allege that Defendants had actual knowledge of Roe's inappropriate touching of female students on "ass grab Fridays," and as such, there are no allegations that indicate that Defendants had actual knowledge that Roe was targeting Plaintiff, or other female students for that matter, on the basis of gender.  While Plaintiff's allegations of

---

[7] "Gender is a quasi-suspect class that triggers intermediate scrutiny in the equal protection context; the justification for a gender-based classification thus must be exceedingly persuasive." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir. 2014) (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)). There is no dispute that no exceedingly persuasive justification exists with respect to sexual harassment or gender-based bullying.

[8] Plaintiff alleges that Defendants' actions were "motivated in part by the sex and race of the Plaintiff or the sex and race of her abuser or both."  (Am. Compl. ¶ 66.)  Plaintiff, however, has failed to allege the race of either herself or Roe, and accordingly she has failed to sufficiently allege a race-based Equal Protection Clause claim.  The Court focuses its analysis on her gender-based claim.

harassment in August 2016 are more specific, they also do not reference sex-based misconduct. As discussed above, Plaintiff has alleged that Roe shoved Plaintiff twice and also intimidated her in class, but while this behavior was aggressive and inappropriate, none of this alleged harassment was related to Plaintiff's sex. Simply put, Plaintiff has failed to allege that Defendants had actual knowledge that Plaintiff or any other female students were harassed on the basis of sex, and accordingly, Plaintiff's Equal Protection claim fails. *See Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp. 2d 775, 794 (N.D. Ohio 2013) (rejecting Equal Protection claim where plaintiff failed to show that she or her parents "ever informed the school [ ] that [she] was suffering from discrimination based on her nationality").

Additionally, as the court explained in *Vidovic*, "all equal protection claims are based on the premise that members of a protected class have been treated differently than others who are similarly situated." 921 F. Supp. 2d at 794. Plaintiff is a member of a protected class—she is a female—but she has failed to allege that Defendants treated other students, who were not members of a protected class differently. Plaintiff has not alleged that Defendants responded differently to complaints male students made about Roe's bullying or about bullying in general, nor has Plaintiff alleged that Defendants responded to bullying complaints from any other students differently than they did Plaintiff's complaints. As such, Plaintiff has failed to sufficiently allege "that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Schroeder*, 282 F.3d at 950-51; *see also Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834, 852 (6th Cir. 2016) (rejecting equal protection claim because plaintiff failed to show that school treated "other students—male or female [ ]—who similarly complained about or suffered from bullying" differently); *Vidovic*, 921 F. Supp. 2d at 794

(rejecting equal protection claim because there were no "allegation[s] that the school or its employees treated nationality-based bullying differently than any other type of bullying"); *Estate of Carmichael ex rel. Carmichael v. Galbraith*, No. 3:11-CV-0622-D, 2012 WL 13568, at *4 (N.D. Tex. Jan. 4, 2012) (rejecting equal protection claim because plaintiffs did not allege that school responded to bullying incidents involving students of other genders differently).

Accordingly, the Court dismisses Plaintiff's Equal Protection Clause claim without prejudice.[9]

## IV.    Illinois State Law Claims

Because the Court grants Defendants' motion to dismiss Plaintiff's Title IX and § 1983 claims, the Court does not have subject matter jurisdiction, and thus declines to exercise its supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiff's Complaint in its entirety without prejudice.

**Dated:** December 29, 2017

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**

---

[9] Because the Court has dismissed Plaintiff's substantive due process and Equal Protection Clause claims in their entirety, the Court need not address Defendants' argument that the District cannot be held liable for those claims.